IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| In the Matter of: | Case No.: |
| **NORTH PIER OCEAN VILLAS** | **21-01760-5-DMW** |
| **HOMEOWNERS ASSOCIATION, INC.,** | Chapter 11 |
| Debtor. | |

**PLAN OF LIQUIDATION**

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor hereby submit the following Plan of Liquidation:

**I.  SUMMARY OF PLAN**

The Debtor was incorporated in 1984 as a North Carolina non-profit corporation pursuant to Chapter 47A of the North Carolina General Statutes, the North Carolina "Unit Ownership Act." It serves as the homeowners' association for North Pier Ocean Villas, a condominium/timeshare development located in Carolina Beach, North Carolina. The Debtor is the governing body for the development and exists to manage, operate and maintain the forty-seven condominium units and common areas that comprise it. In order to satisfy the debts listed below, the Debtor intends to (i) terminate the timeshare regime and revert the timeshare interests to fractional interests in the underlying condominiums, (ii) consolidate the fractionalized tenants-in-common interest held by it and other owners pursuant to 11 U.S.C. § 363(h), (iii) market and sell those consolidated interests, together with the associated common areas (collectively, the "Property"), and (iv) utilize the net proceeds from the Property (the "Liquidation Proceeds") to compensate the individual owners of timeshare interests and fund the Plan, including payment of administrative claims, secured claims, priority tax claims (including ad valorem taxes) and unsecured claims. Any funds remaining after full repayment of allowed senior classes of claims shall be paid pro-rata to the members of the Debtor association in accordance with the provisions set forth below.

The Debtor shall pay unpaid administrative costs in full from the Liquidation Proceeds or by such other mutually agreeable terms as the parties may agree.

All liabilities of the Debtor will also be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor in the Plan of Reorganization.

IT IS IMPORTANT TO NOTE THAT THE PLAN OF LIQUIDATION CONTEMPLATES A FULL LIQUIDATION OF BANKRUPTCY ESTATE ASSETS, TOGETHER WITH THE CONSOLIDATED INTERESTS HELD BY ALL OTHER TIMESHARE OWNERS.

**II.  DEFINITIONS**

1.  "ADMINISTRATIVE CLAIM" means any Allowed Claim entitled to priority under Sections 503(b) and 507(a)(1) of the Bankruptcy Code.

2.  "AGENTS" mean directors, officers, employees, agents, representatives, attorneys, financial advisors and accountants of the Debtor.

3.  "ALLOWED CLAIM" means (i) a Claim that has been scheduled by the Debtors as

1

liquidated, undisputed and not contingent, and as to which Claim no objection has been timely made by the Debtor or any other Person, (ii) a Claim allowed (and only to the extent allowed) by a Final Order, or (iii) a Claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment no objection has been made within the time allowed for the making of objections.

4. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

5. "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6. "BAR DATE" means the date established by the Bankruptcy Court for filing proofs of claim in this Chapter 11 case; provided, however, that, if the Bankruptcy Court has ordered an extension of the time by which a Creditor may file a proof of claim, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor.

7. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article IV of the Plan.

8. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

9. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

10. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtors.

12. "CREDITORS" shall mean all creditors of the Debtors holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13. "DEBTOR" shall mean North Pier Ocean Villas Homeowners Association, Inc.

14. "DISBURSING AGENT" shall mean David J. Haidt, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15. "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtors as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtors, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17. "EFFECTIVE DATE" means the date on which the conditions precedent set forth in

Section VI of the Plan have been satisfied.

18. "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

19. "FINAL ORDER" means an order of the Bankruptcy Court that (i) has not been reversed, modified, amended or stayed, and as to which the time for appeal or to seek review or rehearing of or certiorari thereof has expired, or (ii) if appealed, shall not be subject to a stay pending appeal.

20. "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

21. "LIEN" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code and shall include a Mortgage.

22. "MORTGAGE" means a mortgage or deed of trust on real property or similar instrument.

23. "PERSON" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other agency or entity.

24. "PETITION DATE" shall mean the date upon which the Debtors filed the voluntary Chapter 11 petition.

25. "PLAN" shall mean this Plan of Liquidation in its present form or as it may be amended or modified.

26. "PRE-PETITION" means, with respect to any Claim, a Claim, or part thereof, that arose by contract, judgment, statute, operation of law or otherwise prior to the Petition Date.

27. "PRIORITY TAX CLAIM" means any Allowed Claim for taxes, to the extent that it is entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

28. "PROPERTY" means the consolidated fractional property interests comprising the forty-two (42) condominiums, together with all associated common areas, owned collectively by the Debtor and other owners as tenants-in-common.

29. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

30. "REJECTION CLAIM" means any Allowed Claim arising under Section 502(g) of the Bankruptcy Code.

31. "SECURED CLAIM" means an Allowed Claim secured by a Lien on Property to the extent of the value of the Creditor's interest in the Estate's interest in such Property, and to the extent such Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance or subordination under

the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in the Case.

32. "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

33. "GENERAL UNSECURED CLAIM" means an Allowed Claim that is not an Administrative Claim, a Priority Tax Claim or a Secured Claim.

### III. CLAIMS IMPAIRED BY THE PLAN

Classes I, II and III are unimpaired under this Plan. Classes IV, V, VI and VII are impaired under this Plan. Classes that are unimpaired by this Plan are not entitled to vote to accept or reject this Plan. Only holders of Allowed Claims that are impaired by this Plan are entitled to vote to accept or reject this Plan. A Claim is entitled to the treatment accorded to a particular Class only to the extent that such Claim is an Allowed Claim.

### IV. CLASSIFICATION AND TREATMENT OF CLASSES OF CREDITORS

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

**A.     Class I - Administrative Claims**

(1)     Classification. Class I consists of claims for any cost or expense of administration pursuant to Sections 503, 506 and 507 of the Bankruptcy Code.

The following claims will be paid as costs of administration under Section 503(b):

| | |
|---|---|
| David J. Haidt<br>Bankruptcy Counsel for Debtors | TO BE APPLIED FOR IN THE UNITED STATES BANKRUPTCY COURT |
| McIntyre, Paradis, Wood<br>   and Company, LLC<br>Accountant for Debtors | TO BE APPLIED FOR IN THE UNITED STATES BANKRUPTCY COURT |
| Conversion Financial, LLC<br>Post-Petition Financing | OPERATING LINE OF CREDIT IN MAXIMUM PRINCIPAL AMOUNT OF $250,000 |

(2)     Impairment. This class will be unimpaired.

(3)     Treatment of General Administrative Claims. General administrative costs and expenses approved by the Court shall be paid in cash and in full, including accruals to date of payment from the portion of the Liquidation Proceeds attributable to fractional interests in the Property owned by the Debtor (defined as the "Debtor Proceeds" in Section VII(A) below), in accordance with priorities established by the Bankruptcy Code or upon such other terms as the parties may mutually agree. Payment of sums due and owing at the time shall be paid at the closing of the sale of the Debtor's Property. The Debtor estimates that these claims will total approximately $500,000; however, while this is the Debtor's best estimate, there can be no assurance that the actual fees will not in fact exceed this amount, especially if there is substantial opposition to the Disclosure Statement and/or

4

confirmation, or if the Debtor is involved in protracted litigation related to the consolidation of fractionalized condominium interests.

(4)     Treatment of Conversion Financial, LLC's Post-Petition Claim.  Conversion Financial, LLC ("Conversion") has a secured administrative claim pursuant to § 364(c)(1) and (2), approved by the Bankruptcy Court pursuant to order entered September 1, 2021. Conversion's § 364 claim shall be paid from the portion of the Liquidation Proceeds attributable to fractional interest in the property owned by the Debtor in accordance with the loan documents executed between the Debtor and Conversion and the Bankruptcy Court's order (i.e., a secured claim paid from the proceeds of the sale and any unsecured portion paid as a § 364(c)(1) administrative expense priority claim).

(5)     Reservation of Funds for Administrative Costs.  If the administration of this case has not been completed by the date of the final distribution of Sale Proceeds (as set forth below) to Class VI creditors, the Debtor shall reserve funds from the Debtor Proceeds (as defined below) in an amount estimated to cover the projected costs to complete the administration of the case, including any litigation costs. The projection of costs shall take into account the likelihood of additional recoveries for the Bankruptcy Estate. At the conclusion of the administration of the Estate, the Debtor shall distribute any remaining funds to creditors according to their respective rights under the Bankruptcy Code, or, if applicable, to the Class VII Equity Security Holders.

NOTICE OF BAR DATE: **All administrative claims other than § 364(c) administrative and claims of a court approved professional shall be filed no later than thirty (30) days from the Effective Date.  Otherwise, such claims shall be waived and shall not be asserted against the Debtor at any time.**

## B.     Class II - Priority Ad Valorem Taxes

(1)     Classification. Class II consists of claims against the Debtor for property taxes to the New Hanover County Tax Collector, as follows:

      i.     New Hanover Co. Tax Collector (Claim No. 2)          $ 42,344.80

(2)     Impairment. This class will be unimpaired.

(3)     Treatment. Allowed ad valorem taxes owed by the Debtor shall be paid in full on or before the Effective Date from the Liquidation Proceeds, allocated between those proceeds attributable to fractional interests owned by the Debtor (the "Debtor Proceeds") and those fractional interests owned by non-Debtor Unit Owners (the "Unit Owner Proceeds") in accordance with priorities established by the Bankruptcy Code and the provisions of 11 U.S.C. § 363.

## C.     Class III - Priority Tax Claims:

(1)     Classification.  Class III consists of allowed claims against the Debtor for income taxes, withholding taxes, unemployment taxes, excise taxes and/or any and all other taxes assessed against the Debtors, plus interest as allowed by law, as the same are entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.  Presently, the Debtor is aware of the following claims filed against the estate:

|  |  |  |
|---|---|---|
| i. | Internal Revenue Service (Claim No. 1 – amended) | $ 2,633.53 |
| ii. | N.C. Dept of Revenue (Claim No. 3) | $   306.36 |

(2)  <u>Impairment</u>.  This class will be unimpaired.

(3)  <u>Treatment</u>.  **Unsecured Priority Tax Claims**, as allowed by the Bankruptcy Court and as described in Sections 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code, shall receive deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal to the full amount of such Priority Tax Claim, with interest at the rate set by Internal Revenue Code Sections 6601 and 6621. Unless paid in full on or before the Effective Date, the Class III Unsecured Priority Tax Claims shall be paid from the Debtor Proceeds portion of the Liquidation Proceeds.  Unsecured Priority Tax Claims may be prepaid at any time without premium or penalty.

The Debtor shall have a period of thirty (30) days to cure any plan payment not made upon the due date, such cure period to begin the 1st day of any month during which a payment is due and not paid and continuing for 30 days thereafter.  Upon the Debtor's failure to cure any delinquent payment, holders of tax claims shall be entitled to exercise such remedies as deemed appropriate by the taxing authority and permitted by law.

Unsecured Priority Tax Claims that are **Costs and Expenses of Administration** shall be paid in cash in accordance with the treatment afforded Class I creditors.

**Secured Tax Claims** shall retain their secured interest in the property of the Debtor in a manner consistent with the pre-petition security interests and liens asserted by the taxing authority, and receive deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal to the full amount of such Secured Tax Claim, with interest at the rate set by Internal Revenue Code Sections 6601 and 6621.  The Class III Secured Tax Claims shall be paid in equal quarterly installments of principal and interest, with all unpaid principal and accrued interest due on the fifth anniversary of the date of the order for relief.  Payments shall commence on the first day of the third full month following the Effective Date.  Secured Tax Claims may be prepaid at any time without premium or penalty.

The Debtor shall have a period of thirty (30) days to cure any plan payment not made upon the due date, such cure period to begin the 1st day of any month during which a payment is due and not paid and continuing for 30 days thereafter.  Upon the Debtor's failure to cure any delinquent payment, holders of tax claims shall be entitled to exercise such remedies as deemed appropriate by the taxing authority and permitted by law.

**Unsecured General Tax Claims** shall be treated in a manner consistent with the treatment afforded creditors holding General Unsecured Claims.

D.  <u>**Class IV – Owners of Timeshare Units ("Unit Owners")**</u>:

(1)  <u>Classification</u>.  The class of Unit Owners includes any Person, other than the Debtor, holding an ownership interest in one or more interval timeshare weeks as of the Petition Date, and now holding an undivided fractional interest in one or more of the forty-two (42) condominiums comprising the North Pier development.

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>. In accordance with the terms identified in the Means of Execution, the Debtor intends to market and sell the Property by way of a court-approved sale procedure. As described in the Disclosure Statement, Unit Owners have been asked to sign and send to Debtor's bankruptcy counsel a Consent Order authorizing the sale of the Unit Owner's interest in the Property free and clear of all right, title and interest held by the Unit Owner in the Property. Any Unit Owner who does not sign a Consent Order permitting the sale of his or her interest will be named as a Defendant in a lawsuit for the purpose of obtaining clear title to the Property. Unit Owners are urged to execute the Consent Order in order to avoid litigation costs, prevent further delay of distributions and maximize the distribution to all Unit Owners from the Liquidation Proceeds.

Following the sale of the Property and the repayment of any allowed claims asserted by creditors in Class II, which shall be pro-rated between those proceeds attributable to fractional interests owned by the Debtor (the "Debtor Proceeds") and those fractional interests owned by non-Debtor Unit Owners (the "Unit Owner Proceeds"), Unit Owners shall receive a distribution from the Unit Owner Proceeds on account of each Unit Owner's allocable fractional share in the Property, based on the number of timeshare units owned. The distribution to individual Unit Owners will be reduced by the amount of any unpaid maintenance fees or assessments accruing prior to September 30, 2021. The applicable fractional ownership shares and record of unpaid maintenance fees, dues and/or assessments for each Unit Owner are set forth on Exhibit "B-1" to the Debtor's Disclosure Statement. Except as provided herein, the Debtor will not make any further distribution to members in this Class <u>on account of the ownership of timeshare interests</u>. Unit Owners may receive a distribution in connection with their status as members of the Debtor, as more fully set forth below in the treatment of Class VII claims. Members of this class are directed to Section V of this Plan, as well as to the Disclosure Statement, for additional information.

**E.    Class V – Maintenance Fee Claims:**

(1) <u>Classification</u>. This class consists of all allowed, undisputed, non-contingent unsecured claims identified in the Debtor's Schedules and/or listed in Exhibit B to the Disclosure Statement as holding "Maintenance Fee Claims." These claims are held by Unit Owners who pre-paid or overpaid their maintenance fees prior to the filing of the bankruptcy petition on August 5, 2021.

(2) <u>Impairment</u>. This class will be impaired.

(3) <u>Treatment</u>. Members holding allowed claims in this Class will receive a pro-rata distribution of net Debtor Proceeds allocated to the Debtor from the sale of the Property, if any, following satisfaction of claimants in Classes I, II and III.

**F.    Class VI – General Unsecured Claims:**

(1) <u>Classification</u>. This class consists of all allowed unsecured claims that are not claims asserted by a claimant in Classes I, II, III, IV or V.

(2) <u>Impairment</u>. This class will be impaired.

7

(3) <u>Treatment</u>. The Debtor shall pay holders of allowed general unsecured claims in this class the value of their respective claims, together with interest accruing at the fixed rate of 2.5% from and after the Effective Date, a pro-rata distribution of net Debtor Proceeds allocated to the Debtor from the sale of the Property, if any, remaining after satisfaction of claimants in Classes I, II, III, and V.

**G.**     **Class VII – Equity Security Holders**

(1) <u>Classification</u>. This class consists of all pre-petition statutory ownership interests in the Debtor held by the Unit Owners.

(2) <u>Impairment</u>.     This class will be impaired.

(3) <u>Treatment</u>. Members of this class shall not receive any distributions or retain any value on account of their interests in the Debtor unless all classes of creditors in Classes I, II, III, V and VI are satisfied in full. Each Unit Owner's distribution shall be reduced by the amount of any unpaid maintenance fees for any year prior to 2021 that were not otherwise recovered pursuant to the distributions made in accordance with the Class IV treatment above. The applicable ownership interest and record of unpaid maintenance fees are set forth on Exhibit "B-1" to the Debtor's Disclosure Statement.

In the event that the administration of this case has not been completed by the date of the distribution of Sale Proceeds to Class VI creditors, the Debtor shall reserve funds from the Debtor Proceeds in an amount estimated to cover the projected costs to complete the administration of the case, including any litigation costs. The projection of costs shall take into account the likelihood of additional recoveries for the Bankruptcy Estate. At the conclusion of the administration of the Estate, the Debtor shall distribute any remaining Debtor Proceeds pro-rata to Class VII members.

**H.**     **Other Agreements.** Notwithstanding the foregoing, each holder of an Allowed Claim under Article IV of the Plan may agree to less favorable treatment, in which case, such holder shall be paid in accordance with such agreed treatment.

## V. DISCLAIMER

All parties are advised and encouraged to read the Disclosure Statement and this Plan in their entirety before voting to accept or reject the Plan or before voting on any other matter as provided for herein.

Plan summaries and statements made in the Disclosure Statement are qualified in their entirety by reference to the Plan itself, the Disclosure Statement, and all exhibits annexed thereto. The statements contained in the Disclosure Statement are made only as of the date thereof. No assurances exist that the statements contained herein will be correct any time thereafter.

The information contained in the Disclosure Statement is included herein for purposes of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how to vote on the Plan. No representations concerning the Debtor are authorized by the Debtor other than as set forth in the Disclosure Statement. Any other representations or inducements made to solicit your acceptance that are not contained in this Disclosure Statement should not be relied upon by you in arriving at your decision to accept or reject the Plan.

With respect to adversary proceedings, contested matters, other actions or threatened actions, the Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver; rather, the Disclosure Statement shall constitute statements made in connection with settlement negotiations.

Neither the Disclosure Statement nor Plan shall not be admissible in any non-bankruptcy proceeding involving the Debtor or any other party. Furthermore, Neither the Disclosure Statement nor Plan shall not be construed to be conclusive advice on the legal effects, including, but not limited to the tax effects, of the Debtor's Plan of Liquidation. You should consult your legal or tax advisor on any questions or concerns regarding the tax or other legal consequences of the Plan.

The information contained in the Plan and Disclosure Statement is not the subject of a certified audit and formal appraisals. The Debtor's records are dependent upon internal accounting methods. As a result, valuations and liabilities are estimated. Although substantial efforts have been made to be complete and accurate, the Debtor is unable to warrant or represent the full and complete accuracy of the information contained herein.

## VI.  CONDITIONS PRECEDENT TO EFFECTIVE DATE

A. <u>Conditions Precedent to the Effective Date</u>. The following shall be conditions precedent to the Effective Date:

(1) Fourteen days shall have expired since the Confirmation Date and no stay of the Confirmation Order shall be in effect.

B. <u>Waiver of Conditions Precedent</u>. Any condition precedent to the Effective Date of the Plan may be deferred or waived by the Debtor.

## VII.  MEANS OF EXECUTION

A. <u>Sale of Property</u>. In general, the Debtor proposes to make payments under the Plan from funds on hand, if any, and Liquidation Proceeds derived from the sale of the Property. More specifically, once the condominiums and common areas are sold, the Liquidation Proceeds will be divided into two portions. The first portion will relate to the sale proceeds attributable to fractional interests owned by the Debtor (the "Debtor Proceeds"); and the second portion will relate to sale proceeds attributable to fractional interests owned by Persons other than the Debtor (the "Unit Owner Proceeds").

The following items shall be paid from the Unit Owner Proceeds of the sale of the Property before distribution to any Unit Owner:

a. Ad Valorem Taxes owed to New Hanover County, pro-rated between Debtor Proceeds and Unit Owner Proceeds; and

b. Real Estate Broker's Commission as approved by the Bankruptcy Court, pro-rated between Debtor Proceeds and Unit Owner Proceeds; and

c. Closing costs associated with the sale of the Property, pro-rated between Debtor Proceeds and Unit Owner Proceeds.

Following the payments set forth above, the Debtor will distribute the remaining net Unit Owner Proceeds to the Unit Owners in accordance with each owner's allocable ownership percentage as set forth on Exhibit "B-1" of the Disclosure Statement, subject to any reductions or additions as described herein.

Net Debtor Proceeds shall be utilized to satisfy claims asserted against the Debtor, both pre- and post-petition. Upon satisfaction of all such allowed claims remaining funds, if any, shall be allocated pro-rata to the members of the Debtor when the bankruptcy case is closed.

B. <u>Management of Debtor</u>. The currently existing Board shall remain in place and manage the Association through the consummation of the Plan. In the event that a vacancy should arise among the two members of the Board, the remaining member shall attempt to find a replacement member for the departed/departing Board member in accordance with the Debtor's bylaws. All members of the Board shall act in the best interests of the Debtor and its members, in working to consummate the Plan.

C. <u>Distributions Pursuant to the Plan</u>. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day. All payments or distributions made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal. In the event that a creditor claims that it is entitled to costs and/or attorney's fees, such creditor must file a fee application with the Court and such costs and attorney's fees must be approved by the Court prior to such costs and attorney's fees becoming part of the creditor's allowed claim.

D. <u>De Minimis Distributions</u>. No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

E. <u>Unclaimed Property</u>. If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

F. <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>. All transactions avoided or otherwise set aside pursuant to §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law. Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.

G. <u>Preservation of Right to Credit Bid</u>. All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser. In the event of a private sale that will not produce sufficient funds to satisfy the claim of the secured creditor(s) in full, the Debtor shall provide the secured creditor(s) with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before the Debtor's deadline for accepting such contract to inform the Debtor in writing whether it wishes to purchase the property via a credit bid upon the same or better terms that that offered by the purchaser. In the event the creditor does not provide written notification to the Debtor that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid. Each secured creditor shall be responsible for providing the Debtor with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (*i.e.* facsimile, electronic mail, or via telephonic communication).

H. The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

I. The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

J. Except as expressly stated in the Plan or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

K. Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that they could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

L. Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

M. All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 90 days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

N. <u>Revocation of Plan.</u> The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

O. <u>Sales Free and Clear of Liens.</u> All real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations, in accordance with the provisions of 11 U.S.C. § 363 and further orders of the Court.

P. <u>Distribution of Liquidation Proceeds.</u> Upon the sale of the real or personal property proposed to be sold by this Plan, the liens secured by such property, if any, shall attach to the net proceeds of the sale remaining after payment of costs of sale and all reasonable and ordinary closing costs (including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code. In the event the net proceeds of the sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be

distributed pro rata. The Debtor shall file additional motions with the Court setting forth the proposed distribution of any excess Liquidation Proceeds prior to distribution to creditors.

Q. <u>Claims Paid by Third Parties</u>. To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

R. <u>Exemption from stamp tax or transfer tax.</u> Pursuant to 11 U.S.C. § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

S. <u>Procedure for Payment of Professional Fees</u>. Current Bankruptcy Court approved professionals shall not subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

T. <u>Employment of Officers</u>. Subject to the Debtor's bylaws, the Debtor shall employ John Hutchings as President for the life of the Plan.

## VIII.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.

## IX.  DISPUTED CLAIMS

A. <u>Objection Bar Date</u>. Unless a different date is set by order of the Bankruptcy Court, all objections to Claims shall be filed no later than 90 days after the Confirmation Date or 90 days after a timely proof of claim is filed, whichever is later. All Disputed Claims shall be litigated to Final Order, settled or withdrawn. The Debtor shall have authority to settle Disputed Claims without approval of the Bankruptcy Court. The Debtor shall have authority to settle Disputed Claims without approval of the Bankruptcy Court.

B. <u>Right to Object to Claims</u>. The Debtor shall have the right to object where appropriate to the allowance of Claims following the Confirmation Date; <u>provided</u>, <u>however</u>, that nothing in this Section shall affect the right of any other party in interest to file objections or to continue to pursue objections that had been filed prior to the Confirmation Date.

C. <u>Distributions with Respect to Disputed Claims</u>. Except as may be otherwise agreed with respect to any Disputed Claim, no distribution under this Plan shall be made with respect to any portion of a Disputed Claim until such Disputed Claim shall have become an Allowed Claim or settled by the Debtor.

## X.  PROVISIONS GOVERNING DISTRIBUTIONS

A. <u>Disbursing or Escrow Agent</u>. A person named by the Bankruptcy court will act as

Disbursing or Escrow Agent for the receipts and disbursements of all proceeds derived from the sales described herein. Said Disbursing or Escrow Agent may account to the Court for all funds received and disbursed, and such disbursement shall be subject to the approval of the Court.

  B. <u>Delivery of Distributions in General</u>. Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

  C. <u>Distribution Dates</u>. It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

## XI. EXECUTORY CONTRACTS

  A. <u>Assumption of Executory Contracts</u>. Unless otherwise set forth herein, any other pre-petition executory contract and unexpired lease in which the Debtor is a party shall be deemed to be rejected by the Debtor on the Confirmation Date unless the Debtor, prior to Confirmation, notifies the Bankruptcy Court and the other parties to such contract or lease that the contract or lease will be assumed.

  B. <u>Rejection Claims</u>. All Claims arising from rejection of any executory contract or unexpired lease shall be forever barred unless a Rejection Claim relating thereto is duly filed with the Bankruptcy Court and served upon the Debtor and counsel to the Debtor within 30 days after the Confirmation Date.

## XII. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

  A. <u>Each Impaired Class Entitled to Vote Separately</u>. Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

  B. <u>Acceptance by a Class of Creditors</u>. Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

  C. <u>Claimants Entitled to Vote</u>. Holders of impaired claims shall be entitled to vote if:
(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

13

    (4)    Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

    D.    <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

    E.    <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (⅔) in amount and more than one-half (½) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

    F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section XIII herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## XIII.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

    In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponents of this Plan request the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XIV.  RETENTION OF JURISDICTION

    The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, <u>inter alia</u>:

    1.    to determine any and all objections to the allowance of claims and/or interests;

    2.    to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

    3.    to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

  4.  to determine all controversies and disputes arising under or in connection with the Plan;

  5.  to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

  6.  to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

  7.  to determine such other matters and for such other purposes as may be provided for in the confirmation order;

  8.  to determine all disputes regarding property of the estate;

  9.  to establish and adjust procedures for the orderly administration of the estate;

  10.  to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

  11.  to replace the Debtor-in-Possession with a Trustee for good cause shown.

  12.  to determine and approve the Debtor's discharge of all dischargeable debts.

## XV.  MISCELLANEOUS PROVISIONS

  A. <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

  B. <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

  C. <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

  D. <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

  E. <u>Full and Final Satisfaction</u>.  All payments and distributions under this Plan shall be in full and final satisfaction, settlement, release and discharge of all Claims against the Debtor and/or the Estate.

  F. <u>Liens and Personal Guarantees</u>.  All liens, judgments and encumbrances not specifically addressed in this Plan and remaining in favor of any creditor against any property owned by the Debtors shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.   All pre-petition corporate guarantees not expressly assumed hereunder shall be deemed rejected and terminated.

Respectfully submitted, this the 3rd day of December, 2021.

*/s/ David J. Haidt*
DAVID J. HAIDT
N.C. State Bar #22092
AYERS & HAIDT, P.A.
Attorneys for the Debtor
Post Office Box 1544
New Bern, NC 28563
(252) 638-2955
(252) 638-3293 facsimile
davidhaidt@embarqmail.com

DEBTOR:

North Pier Ocean Villas Homeowners
 Association, Inc.

*/s/ John Hutchings*
By: John Hutchings
Its: President and Chairman of
 the Board of Directors

## CERTIFICATE OF SERVICE

I hereby certify that I this day have served a copy of the foregoing Plan of Liquidation upon the other parties to this action by electronic service via CM/ECF, this 3rd day of Dec ember, 2021.

DATED:   December 3, 2021

>   */s/  David J. Haidt*
>   DAVID J. HAIDT
>   AYERS & HAIDT, P.A.
>   Attorney for Debtor
>   P.O. Box 1544
>   New Bern, NC  28563
>   (252) 638-2955
>   N.C. State Bar #22092

TO:   Bankruptcy Administrator (via:  CM/ECF)

North Pier Ocean Villas Homeowners Association, Inc. (via e-mail)